The first case in which we're going to hear oral argument this morning is Salazar v. Mukasey. Saad Ahmed for the petitioner, Lorena Salazar, Your Honors. Could you move the microphone just a little closer to you so we can hear you? Yes, Your Honors. Thank you. Your Honor, the main issue in this case is whether the Board of Immigration Appeals abused its discretion in denying the petitioner's motion to reopen based on ineffective assistance of counsel. In denying the motion to reopen, the BIA concluded that petitioner was not prejudiced by her former counsel's ineffective representation because she failed to establish that she suffered extreme cruelty at the hands of her former husband. Your Honors, an alien seeking to reopen a case based on ineffective assistance of counsel must establish two things. First, he or she must establish that the former counsel's representation was not adequate. And number two, that she was prejudiced by the former counsel's. What's your best case on the proposition that prejudice means some collateral consequence in some possible later proceeding as opposed to prejudice in the proceeding at hand? Do you understand the question? Yes, Your Honor. I understand. And what's your best case that says we consider something that might happen collaterally later versus when it makes no difference to the proceeding at hand? Your Honor, for example, when this Court looks at an asylum application, the Court Your best case, case, you know, the authority A versus B. What is your best authority on that proposition? My best authority would be in cases involving aliens applying for asylum, for example, where a frivolous asylum application bars an alien permanently from obtaining any immigration benefit. Are you referring to the Eleventh Circuit case? That's one. Yes, Your Honor, the Eleventh Circuit case. Well, the Eleventh Circuit case was a direct appeal in the first place. Yes, Your Honor. This is not a direct appeal. It was a direct appeal in the first place. In the second place, the frivolity determination had nothing to do with the merits of the case itself. The decision in that case was that the statute of limitations barred going forward. The end. The case was over. Then they made a frivolity determination which is solely aimed, totally aimed at future consequences, right? Yes. So there's those two, I think, rather significant distinctions. Do you have a case that's on petition to reopen where it will make no difference in the case at hand? Your Honor, I don't believe there's a case, there's a published case as to that issue. However, in this case, the marriage fraud determination was dispositive as to the Petitioner's claim under the Violence Against Women Act as well. Well, both elements are dispositive. Yes, Your Honor. However, first you've got to be a spouse. So you're not a spouse. Yes. Secondly, if you are a spouse, you weren't abused within the meaning of the law. So it's just a two-step process to decide whether you're entitled to relief. Yes. So either one is dispositive, right? Yes, Your Honor. However, a marriage fraud determination taints the second prong, which is extreme cruelty prong. Because in order for the Court to determine whether somebody is eligible for relief under the Violence Against Women Act, they have to establish, first of all, the marriage is bona fide. And that element itself is important because, Your Honor, if a marriage is bona fide, then the Court can look at more specifics as to the kind of abuse, mental abuse, psychological abuse. What's your best case for the proposition that an immigration court, the BIA in particular, cannot decide that, you know, we don't care if this person was a spouse or not. We decide that this person wasn't abused. Your Honor. We do that kind of thing all the time, of course. We say we don't have to decide issue A because issue B doesn't – she doesn't make issue B anyway. Your Honor, in this case, it was an abuse of discretion also because the underlying order by the Board was based on marriage fraud issue only. They didn't even look at the second prong, the extreme cruelty prong. They felt they – so they affirmed the immigration judge's finding on the marriage fraud issue only. They did not even look at the second prong. And this Court reviews the decision of the BIA, not the decision of the immigration judge. I thought the BIA looked at the second prong in the motion to reopen. Your Honor, they did that, but they did not – Wait a minute. Isn't that what we're deciding? We're deciding whether it erred in the motion to reopen, and it said, you know, whether we're right or wrong about the spouse business, there's no prejudice shown because she just wasn't abused. However, Your Honor, they did not decide that issue in the underlying removal order. And the underlying removal order is before this Court. When the BIA decided the case, it affirmed only on the first prong, the bona fide marriage prong. So it's abuse of discretion for them to decide a motion to reopen, excuse me, Your Honor, on the second prong, which is the hardship prong. And, Your Honor, in this case, as I mentioned in my brief, that the collateral consequences flowing from a marriage fraud determination are disastrous. A petitioner is married to a U.S. citizen for eight years. She has three U.S. citizen children. And had her attorney represented her adequately before the immigration judge and had proved that her marriage to her former husband was valid. But we're back to the first question. Yes, Your Honor. The case says that on a motion to reopen, the prejudice issue is a matter of possible collateral consequences vis-a-vis an effect on the case at hand. Your Honor, there is no case as to that issue. However, as I mentioned earlier, Your Honor, that when an attorney represents a client in immigration court, he has a duty to make sure that the client is adequately represented on all matters. And in this case, the marriage fraud issue was not even an issue that was not important. And in fact, her very basis for applying for Violence Against Women Act was based on the marriage fraud issue. And in this case, her attorney's failure to adequately bring or present that issue up prejudiced her because not only was she not able to establish that she qualified for relief under Violence Against Women Act, it barred her permanently. And as the U.S. Court of Appeals for the Eighth Circuit recently, I submitted a 28-year letter last week, Your Honor. The Eighth Circuit in that decision said that an immigration judge can independently review the CIS's determination as to marriage fraud because of the severe consequences flowing from it. In this case, the attorney ---- Sure. But that case was direct appeal also, wasn't it? It was direct appeal, Your Honor. It was direct appeal. And they said, we can't review. We can't review what the ---- what was it? The CIS had decided. Or supposedly, they said. The dissent thought the contrary. Yes. Supposedly, they said, we can't review what the CIS decided. And the Eighth Circuit said, sure you can. Yes. Okay. So? Yes, you can. In this case, the attorney was at notice that that issue was important. In fact, Your Honor, if you look at the immigration judge's decision, in the decision she specifically stated, her decision specifically stated that the petitioner's failure to present some evidence that was easily available showed that her marriage was not bona fide. In fact, if you look at the decision of the immigration judge, the hardship prong was tainted by the fact that the marriage was not bona fide because she did not adequately present that evidence to the court. Your Honor, in this case, the counsel who represented the petitioner was well aware that the marriage fraud issue was dispositive. And no alien can establish eligibility for relief under the Violence Against Women Act unless they can establish that they were ---- that the marriage was bona fide. No alien can ever do that. And the counsel was aware of it. So in this case, had the counsel given the court all the evidence that he should have reasonably given to her, to the judge, the judge would have said, okay, even if you don't qualify for Violence Against Women Act, the CIS's determination as to the prior marriage fraud finding establishes, because she was at the time married to a U.S. citizen. She had two kids at that time. So she would have been able to file for another visa petition and hopefully adjudicated the case before the immigration judge. Her former counsel never brought that issue up, never adequately gave her the opportunity to prove that her marriage was bona fide. I understand, Your Honor, that in the motion to reopen that we filed with the board, we focused more on the marriage fraud issue rather than the extreme hardship issue. And the reason for that was because the BIA's underlying removal order that they affirmed the IJ on, on September 30th, was based on the marriage fraud issue. They never even looked at the extreme cruelty issue. They never even looked at extreme cruelty issue. And that implies that the board was focusing solely on the extreme, on the, on the bona fide marriage issue, not on the extreme cruelty issue. And as I indicated earlier, the court looks at the decision of the BIA, not the, not the IJ, unless it's incorporated or the board summarily affirms the IJ's decision. In this case, the reasons that they stated in denying the underlying case was marriage fraud. And also, excuse me, Your Honor. Counsel, I thought that it was always the case that if one claimed ineffective assistance of counsel, one had to demonstrate prejudice arising out of the ineffective assistance and, as far as the law says so far, in the case at hand. Yes, Your Honor. Yes. That is the, that is the law. So if one were asking to reopen, one would have to say to the BIA, you know, not only was there X, but there was prejudice. Prejudice. And yes, Your Honor, the court requires only that the counsel's representation may have affected the outcome of the case. This Court doesn't require the alien on a motion to reopen to establish that they would have qualified for relief. That's an extremely stringent burden of proof. Of course. But that's not the point. The point is it may not have affected it. It couldn't have affected it because she was never abused. Well, Your Honor, that's a factual inquiry, and as I mentioned before, that that is based on the lack of evidence given to the immigration court. In fact, had her counsel subpoenaed the former husband who claimed that she engaged in marriage fraud, brought her relatives to court, and had been more adequate in preparing for the case, she may have been able to establish that she was a victim of extreme cruelty because law doesn't even require physical violence against women to qualify for this relief. In fact, law requires either physical, mental, psychological abuse. In fact, the boards, the IJ in the decision stated as well that the purpose behind passing the law was that people are not blackmailed by their former husbands. In fact, she said that. She said that in the decision. Your Honor, in this case, the prejudice is established for two main reasons. Number one, the petitioner was not allowed to present her Violence Against Women Act case. And number two, her former counsel's representation prejudiced her because she could not establish that her marriage to her former husband was bona fide, which barred her permanently from establishing eligibility for any benefit under the law. Do you want to save your remaining time for a moment? Yes, Your Honor.  Thank you, counsel. Thank you, counsel. Good morning. May it please the Court, Joan Smiley from the Department of Justice on behalf of the Attorney General. The board's denial of reopening in this case was proper, where it found that no prejudice had resulted from counsel's representation below former counsel because Ms. Salazar failed to establish her eligibility for the special rule cancellation that she sought as a battered spouse. She failed to demonstrate that she was subjected to extreme cruelty by her first husband, which is a requirement for the special rule cancellation under Section 240A, B2A of the Act. Indeed, to establish a due process violation, she would have to show that the proceeding was so fundamentally unfair that the individual was prevented from reasonably presenting her case. And as the panel pointed out, she must show prejudice that the alleged violation that Well, the curious thing about this case is that the BIA didn't rest on the failure to show extreme cruelty. The BIA rested its decision on marriage fraud, right? Which was fatal to the eligibility. Right. Therefore... So if this had been, if we considered this on direct appeal, a direct petition for review, and the government had argued the position that, well, there's an alternative basis for the IJ's decision, we'd have to remand, if we concluded that the marriage, if we were reversing on the marriage fraud, we'd have to remand to the BIA on direct review. Am I making sense of my question? Yes, Your Honor. Okay. I believe that you're referring to INS versus Ventura, that the court should not make the determination in the first instance. In the first instance. Right. However, here, the... But isn't it, just if you'll allow me for a second, isn't that what the BIA did in the motion to reopen, it hadn't concluded originally that its initial decision was based on marriage fraud. She sought to reopen on marriage fraud. And they said, well, no, there's another reason that you're going to lose, and therefore we can't reopen. Isn't the BIA doing what we basically shouldn't do, which is to presume the outcome based on a reason that wasn't given the first time around? Well, the record contained the allegation of extreme cruelty. However, the board found on reopening that the marriage fraud was dispositive. And, indeed, in order to show prejudice, the alleged violation must have affected the outcome of the proceedings, that the claim had plausible grounds for success. And it didn't have plausible grounds for success because of this infirmity. Okay. Let's take that as an assumption. Then we'll get to the question of prejudice. And I want to follow up on the questioning that Judge Fernandez started. In this context, is prejudice measured by the outcome of the proceeding alone, or can we measure prejudice by a collateral consequence? According to the case law, I believe it's measured by the outcome of the proceeding, that the prejudice or the alleged violation affected the outcome of the proceeding. But isn't part of the outcome of the proceeding here that she received what's referred to the death sentence, she can't apply again? It had some of the judgment in the case meant that she was foreclosed from seeking other relief in the future. If that infirmity were removed, wouldn't that necessarily be a change in the outcome of the proceeding? But, again, I think we have to look to what was the violation that led to that outcome. The allegation that the counsel failed to rebut the finding of marriage fraud is actually attributable to Ms. Salazar, not to the former attorney. The former attorney listed Ms. Salazar's mother as a witness on his witness list, and he intended for her to testify, and that's in the record. Yes, I understand that argument. I want to get to that in a second because I know your position is it doesn't make any difference. The marriage fraud finding is sufficiently supported anyway, and I understand that. But I'm just asking on a more theoretical level of what prejudice means in this context and what's sufficient. And if the outcome of the proceeding would have consequences and you can change the outcome of the proceeding or the petitioner could by reopening, why isn't that enough prejudice to constitute a reason for reopening? Because the case law provides that there must be plausible grounds for success in the relief that is being sought. It's not prejudice that would affect someone down the road in another proceeding or in another way. Well, you know, I know you see petitions to reopen all the time where someone wants to reinstate voluntary departure and trying to avoid the 10-year ban and so forth, some of these things. Why is this any different? I mean, the order of removal stands. It's just a collateral consequence of the portion of the order, right? Well, in order to find that the attorney below was ineffective, his or her performance must have the ineffectiveness led to the flaw and caused a outcome that was different where the alien might have had plausible grounds for success. That's the difference that's in the case law as reflected in the government's brief at pages 25 and 26. But wouldn't it have been a more successful outcome if the petition had been denied on the basis of failure to show extreme cruelty, leaving open the possibility of adjustment of status down the road? To me, that's an enormous difference in consequence, isn't it? But again, you know, in the record at hand in this case, there was no showing of extreme cruelty. And that was fatal to the claim. It was fatal to the claim notwithstanding the attorney's alleged ineffectiveness. The record is very clear that Ms. Salazar was never battered, assaulted, threatened with assault, controlled by her former husband. Her only claim is that he used harsh language when they were on telephone calls while she was living in California and he was living in Colorado. He expressed anger and regret for having married her during those conversations. But again, it was a marriage that he admitted under oath was fraudulent, that it was done solely for Ms. Salazar to obtain an immigration benefit. And he stated under oath that her mother paid him $3,000 in two installments to marry her, $1,500 on 12-6-97 and $1,500 on 10-98. Counsel, let me ask you another question that's related to this, I think, maybe not directly. We have said on direct appeal anyway, if the BIA brings in additional information or sort of shifts the ground of the whole case, that could constitute a due process violation. Is there any such thought here where the BIA's original decision says, we're deciding this strictly on the basis of marriage fraud, because she was not a spouse. They didn't say marriage fraud. She was not – they were not married. We're deciding it strictly on that ground. The Petitioner then moves to reopen the case by saying, okay, look, that's not right. And all of a sudden, the BIA shifts ground and says, no, no, no, no, no. We're deciding on the basis that she hasn't shown abuse. Now, I agree. That's what – on this record, it sure doesn't look like she's shown the kind of terrible abuse Congress was thinking about. Now, I'm not worried so much about the fact A and fact B. I'm concerned about should the BIA, when it decided to shift ground, at least said, look, guys, we're going to shift ground. Do you want to address this other point? They had no reason to address it before, perhaps. How do you respond to that? Well, I would respond by saying that Petitioner's counsel had a full and fair opportunity to brief the case whatever way he deemed appropriate. Indeed, he filed the brief. He attached a number of exhibits, including a letter from the former attorney explaining that he intended to call Ms. Galindo, which was Ms. Salazar's mother, and that Ms. Galindo was unavailable. She was at home babysitting and also that she had to go shopping. So the record contained all the information. He had a full opportunity to brief whatever he deemed appropriate to the board. I think the question is somewhat different, though. It's on the motion to reopen. And if the BIA is going to use a different grounds in denying the motion to reopen than it did before, shouldn't it give the Petitioner the opportunity to address that in the context of the motion to reopen? Well, we would submit it wasn't different grounds. The special rule cancellation has the two requirements. One, that there be an invalid marriage. Two, that there be a showing of extreme cruelty. So there was no different grounds. I think the different grounds are the grounds relied on by the BIA in the first opinion. You'd agree that the basis of the second opinion is different from the basis of the first opinion. The first opinion, the board found that Ms. Salazar failed to rebut the substantial evidence that supported the finding of marriage fraud. And, again, this topic as well as the extreme cruelty was briefed and is in the record in the evidence and the briefs. The board had that before it and issued the second decision on reopening based on what was submitted to the board. Unless the panel has any further questions, the government would rely on the brief that is filed in this case. Thank you, Counsel. Thank you for the questions. Thank you, Your Honor. Your Honor, I'd just like to say two things. One, I agree with Judge Fernandez's analysis that the BIA violated due process. No, that's just a question. I don't think we're making any statements yet. Yes, Your Honor. I just wanted to answer that. One, I agree with Judge Fernandez that the BIA's decision to decide the motion to reopen on an alternative ground was a due process violation. And as I indicated earlier, the reason the motion to reopen was directed at the marriage fraud issue, not on the extreme cruelty issue, because that was the underlying basis for the board's decision. And second, Your Honor, the government violated the Supreme Court's Chenery Doctrine by post hoc rationalization of the BIA's decision. Their entire brief is supported by allegations and by grounds that were not even relied by the BIA in denying the motion to reopen. Well, let me understand if I under ---- make sure I've got the facts right on the motion to reopen. You filed the motion to reopen. The government opposed it by raising the failure to meet the center of extreme cruelty. Yes, Your Honor. Did you have an opportunity to respond? Yes, Your Honor, we did, but we didn't respond. You did not respond? We didn't think it was necessary because the board's underlying decision was based on the marriage fraud issue. We thought that that was the dispositive issue. But when you're given the opportunity to respond, doesn't that satisfy the due process concerns that we were discussing? Yes, Your Honor. I agree with that, Your Honor. Okay. Thank you. Thank you. The case has certainly been submitted.
judges: Hall, Fernandez, Thomas